```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


THOMAS MOORE, III                         CIVIL ACTION

VERSUS                                    NO: 07-1353 C/W
                                          07-2650, 07-2760

AEP MEMCO LLC, ET AL.                     SECTION: "R"(4)
```

**ORDER AND REASONS**

Before the Court is defendant Kathryn Rae Towing, Inc.'s motion for summary judgment dismissing the claims brought against it by plaintiffs Thomas Moore and Lawrence Scott, or in the alternative, motion for a continuance of the trial date. For the following reasons, the Court GRANTS defendant Kathryn Rae's motion for summary judgment.

**I.   BACKGROUND**

On June 24 and 25, 2006, defendant Cooper T. Smith Stevedoring Company, Inc. was opening a crane barge, the DEE J 215, so that the barge could be loaded with pig iron. Complainants LIFF Limited Partnership, Blaske Marine, Inc. and AEP MEMCO LLC own, manage and operate the barge DEE J 215.[1] They

---

[1] For purposes of this motion, the Court will refer to LIFF Limited Partnership, Blaske Marine, Inc. and AEP MEMCO LLC collectively as "complainants," or "AEP MEMCO."

had delivered the barge to Cooper T. Smith on June 23, 2006.

On June 24, 2006, plaintiff Thomas Moore was working as a member of the crew of cover stackers on the cargo barge, the DEE J 215.  The cover stackers worked in conjunction with a crane operator who was located on Cooper T. Smith's crane barge, the P&C, to take the steel covers off the barge holds and stack them at either end of the cargo barge so that cargo could be loaded into the hold.  A fleet tug owned by Kathryn Rae, the M/V CAPT. E.S.C., was tied up to the crane barge at the time.  Because the crew had difficulty getting one of the hatch covers to stack properly, Moore climbed up the hatch coaming to help guide one of the covers that the crane operator was dropping down on top of the other hatch covers.  While Moore was doing this, another cover shifted and crushed his left foot.  Moore testified in his deposition that before the cover shifted and crushed his foot he felt something bump the cargo barge.  After transporting Moore to the hospital, Cooper T. Smith shut down the stacking operation until the next day.

The next day, June 25, 2006, plaintiff Lawrence Scott worked on the Dee J 215, also as part of a crew of cover stackers.  The P&C was again tied up to the DEE J 215.  A fleet tug owned by Kathryn Rae, the M/V Shelley, was tied up to the P&C.  When the crane operator was again having trouble stacking one of the covers, Scott attempted to help guide the cover that the crane

operator was attempting to stack. Scott's left hand was crushed between two covers during this process. On June 26, 2006, Cooper T. Smith told AEP MEMCO that it rejected the DEE J 215 because two of its employees had been injured while working with the covers. AEP MEMCO allowed Cooper T. Smith to move to another one of its barges.

On March 21, 2007, Moore sued AEP MEMCO and Cooper T. Smith. On April 25, 2007, LIFF Limited Partnership, Blaske Marine, and AEP MEMCO filed a limitation of liability action in this Court. On May 2, 2007, Lawrence Scott sued Cooper T. Smith. On November 27, 2007, all three actions were consolidated in this Court, where complainants had filed the limitation of liability action. In April and May of 2008, Moore and Scott, respectively, amended their complaints to add Kathryn Rae as a defendant. The Court heard oral argument on Kathryn Rae's summary judgment motion on July 30, 2008, and rules as follows.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence

favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. DISCUSSION**

The Court finds that Kathryn Rae is entitled to judgment as a matter of law as there are no genuine issues as to any material facts indicating that Kathryn Rae's tugs were unseaworthy, or that the operational negligence of the tugboats' captains and/or

crew members contributed in any way to Moore's or Scott's injuries. Neither plaintiff has contested Kathryn Rae's motion for summary judgment. Although AEP MEMCO has opposed the motion by pointing to issues of fact, none is material. Therefore, no genuine issue exists for trial.[2]

Moore testified during his deposition that he felt a bump right before the hatch cover shifted and fell on his foot. He speculates that the bump might have been caused by Kathryn Rae's tug, the M/V CAPT E.S.C., which could have bumped the P&C, the crane barge, which in turn could have bumped the cargo barge on which he was working. Moore's testimony is as follows:

> Q. Okay. When you were up there with that last cover that eventually fell on your foot, did you feel any bump? Do you remember?
> A. I certainly did, ma'am.
> Q. Did you see the crane barge bump into it?
> A. I felt it ma'am. I did not look back, ma'am.
> Q. Did anybody see it? Did anybody else to your knowledge? Did anybody else see the crane barge bump into your barge?
> A. I would not know, ma'am. I was watching the cover.
> ...
> Q. Where – what caused the bump that you felt, to the best of your knowledge?
> A. I thought it was the crane and the tugboat.

(Moore Dep. at 43-44, 154.) Moore admits, however, that as he was concentrating on the hatch cover, he had his back to the tug

---

[2] For example, although AEP MEMCO contends there is an issue of fact as to whether to M/V CAPT E.S.C. was on the outboard side of the crane barge or located on the crane barge's stern, this is not relevant evidence that the tugboat bumped either the crane barge or the cargo barge.

and the crane barge and did not see either of them bump into the cargo barge. He also admits that vessel traffic up and down the Mississippi River caused waves and movement of the cargo barge throughout the day. (Moore Dep. at 45-46, 187-88.) He did not know whether a ship or other vessel was passing on the river at the time of his accident, although he thought that other ships created floating movements and waves, not bumps. (*Id.* at 194.)

Moore's speculative testimony is contradicted by evidence that Kathryn Rae's tug, the M/V CAPT E.S.C. was not moving at the time of Moore's accident. Brett Heintz, the crane operator at the time of Moore's accident, testified in his deposition that during stacking operations, the tug was tied off until they needed to move the crane barge. (Heintz Dep. at 14-15.) He also testified that he did not feel any bump right before Moore's accident. (*Id.* at 22, 98.) Ricky Mundy, Cooper T. Smith's supervisor that day, testified that the tugboat remained in neutral during stacking operations, unless and until the crane barge needed to be moved to a new location, but that it would not be moving while the crane operator was stacking covers. (Mundy Dep. at 48:20-25) ("The tugboat is not involved when we are stacking covers. The tugboat, if it's anywhere close to it, it's in neutral idling, standing by. There is no tugboat involved.") Finally, the Captain of the M/V CAPT E.S.C. at the time of Moore's injury, Captain Jackson, attests that during the stacking

operations "the M/V CAPT E.S.C. was not engaged in any maneuvers, but was merely situated alongside the P&C while he, as Captain, awaited instructions from the crane operator to utilize the M/V CAPT E.S.C. to move the crane barge to a different position."[3] (Jackson Aff. ¶ 9.)  He also stated that he did not recall any bump between the tug and either the crane barge or the cargo barge during the stacking operations. (*Id.* ¶¶ 11-12.)

The only evidence that AEP MEMCO introduces are the expert reports of Conrad Breit and David Kroll.  Although Breit opines that "it appears shifting and/or falling of cover(s) was contributed to an object (reportedly the crane barge and/or assist tug) bumping against the 'DEE J 215,'" this is not evidence that the tugboat bumped the crane barge and/or cargo barge, but is rather Breit's summation of Moore's deposition testimony. (Breit Report, R. Doc. 69-3 at 8.)  Similarly, Kroll's report repeats that "Mr. Moore felt something bump into the DEE J 215 just before the stack shifted onto his foot." (Kroll Report, R. Doc. 69-3 at ¶ 7.)  AEP MEMCO has not come forward with any evidence or testimony, such as from another cover stacker, tugboat operator, crane operator, or Cooper T. Smith employee, to contradict Kathryn Rae's evidence that the tugboat took no action

---

[3] Counsel for AEP MEMCO raised the issue at oral argument that Jackson's affidavit is inconsistent with his testimony during his recent deposition.  The Court heard counsel's arguments as to the inconsistencies, but still does not find that the inconsistencies reflect any negligence by the tugboat.

to cause a bump.  Although AEP MEMCO has arguably created an issue of fact that there was a bump, there is no issue of fact that if there was a bump, it was created by the unseaworthy condition or negligence of the tugboat.  Without evidence that some action taken by or some condition of the tugboat caused plaintiff's injury, plaintiff has no claim against Kathryn Rae.

Finally, there is no evidence that the M/V Shelley, Kathryn Rae's tugboat present on the day that Lawrence Scott was working on the Dee J 215, was involved in Scott's injury. (*See* Scott Dep. at 88).  Scott did not testify that he felt a bump before his injury.  Captain Meche, Captain of the M/V Shelley at the time of Scott's injury, states that "the M/V SHELLEY did not move at any time during the stacking operations." (Meche Aff. ¶ 10.) Further, plaintiffs' liability expert, G. Fred. Liebkemann, never mentions the possibility of Kathryn Rae's tugboats striking the P&C barge or the DEE J 215 as a possible cause of plaintiffs' injuries. (*See* Liebkemann Report, R. Doc. 38-4 at 20-22.) Accordingly, the Court finds that plaintiffs' claims against Kathryn Rae are dismissed.  The Court does not reach Kathryn Rae's alternative motion to continue the trial.

## IV.  CONCLUSION

For the foregoing reasons, Kathryn Rae's motion for summary judgment is GRANTED.  Plaintiffs' claims against Kathryn Rae are

dismissed.

New Orleans, Louisiana, this  31st  day of July, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT