```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


THOMAS MOORE, III                          CIVIL ACTION

VERSUS                                     NO: 07-1353 C/W
                                           07-2650, 07-2760

AEP MEMCO LLC, ET AL.                      SECTION: "R"(4)
```

### ORDER AND REASONS

Before the Court are LIFF Limited Partnership, Blaske Marine, and AEP MEMCO's motions for summary judgment, or in the alternative, motion to de-consolidate. For the following reasons, the Court GRANTS IN PART and DENIES IN PART complainants' motions for summary judgment and DENIES complainants' motion to de-consolidate.

### I.   BACKGROUND

On June 24 and 25, 2006, defendant Cooper T. Smith Stevedoring Company, Inc. was opening a crane barge, the DEE J 215, so that the barge could be loaded with pig iron. Complainants LIFF Limited Partnership, Blaske Marine, Inc. and AEP MEMCO LLC own, manage and operate the barge DEE J 215.[1] They

---

[1] For purposes of this motion, the Court will refer to LIFF Limited Partnership, Blaske Marine, Inc. and AEP MEMCO LLC collectively as "complainants," or "AEP MEMCO."

had delivered the barge to Cooper T. Smith on June 23, 2006.

On June 24, 2006, plaintiff Thomas Moore was working as a member of the crew of cover stackers on the cargo barge, the DEE J 215.  The cover stackers worked in conjunction with a crane operator who was located on Cooper T. Smith's crane barge, the P&C, to take the steel covers off the barge holds and stack them at either end of the cargo barge so that cargo could be loaded into the hold.  A fleet tug owned by Kathryn Rae, the M/V CAPT. E.S.C., was tied up to the crane barge at the time.  Because the crew had difficulty getting one of the hatch covers to stack properly, Moore climbed up the hatch coaming to help guide one of the covers that the crane operator was dropping down on top of the other hatch covers.  While Moore was doing this, another cover shifted and crushed his left foot.  Moore testified in his deposition that before the cover shifted and crushed his foot he felt something bump the cargo barge.  After transporting Moore to the hospital, Cooper T. Smith shut down the stacking operation until the next day.

The next day, June 25, 2006, plaintiff Lawrence Scott worked on the Dee J 215, also as part of a crew of cover stackers.  The P&C was again tied up to the DEE J 215.  A fleet tug owned by Kathryn Rae, the M/V Shelley, was tied up to the P&C.  When the crane operator was again having trouble stacking one of the covers, Scott attempted to help guide the cover that the crane

operator was attempting to stack.  Scott's left hand was crushed between two covers during this process.  On June 26, 2006, Cooper T. Smith told AEP MEMCO that it rejected the DEE J 215 because two of its employees had been injured while working with the covers.  AEP MEMCO allowed Cooper T. Smith to move its operations to another one of its barges.

On March 21, 2007, Moore sued AEP MEMCO and Cooper T. Smith. On April 25, 2007, LIFF Limited Partnership, Blaske Marine, and AEP MEMCO filed a limitation of liability action in this Court. On May 2, 2007, Lawrence Scott sued Cooper T. Smith.  On November 27, 2007, all three actions were consolidated in this Court, where complainants had filed the limitation of liability action. The Court heard oral argument on AEP MEMCO's summary judgment motions on July 30, 2008, and rules as follows.

## II. LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v.*

3

*Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. DISCUSSION**

Complainants in the limited liability action move for summary judgement, contending that they did not breach any of the duties they owed in connection with the Barge DEE J 215.  In the alternative, complainants move for summary judgment limiting their liability to the value of the barge at the time of the accident.  Finally, they move the Court to de-consolidate Moore's

4

and Scott's claims against them.

**A.   *Scindia* Analysis**

In *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981), the Supreme Court defined the scope of a vessel owner's duties under § 905(b) of the Longshore and Harbor Worker's Compensation Act and concluded that a vessel owner may only be liable for the injury of a longshoreman if: (1) the vessel owner fails to turn over a reasonably safe ship or fails to warn on turning over the ship of hidden defects of which it knew or should have known; (2) the vessel owner fails to remedy hazards under the active control of the vessel; or (3) the vessel owner fails to intervene in the stevedore's operations when it has actual knowledge both of the hazard and that the stevedore in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it. *Scindia*, 451 U.S. at 167-178.  The parties agree that this action implicates the first *Scindia* duty.

AEP MEMCO contends that it did not breach its turnover duty in connection with the DEE J 215 because the barge's covers were not defective in their design and the covers were not damaged when complainants turned over the barge to Cooper T. Smith, but rather were damaged by Cooper T. Smith's rough handling of the covers during the stacking operation.  AEP MEMCO states that the barge had been in service for several months before the

plaintiffs' accidents, with no reports of any problems with the barge's covers or the stacking of the covers. (*See* Waddington 30(b)(6) Dep. at 35.)  AEP MEMCO further avers that it inspected the barge on June 21, 2006, and did not find any damage, although it made some repairs to the number five cover. (Waddington 30(b)(6) Dep. at 30, 32, 35) ("The covers were in good condition.")  Finally, AEP MEMCO contends that even if the covers were damaged, their condition was open and obvious, a defense to the turnover duty.

    *1.  Turnover Duty*

The Court finds that there are genuine issues of material fact as to whether the covers were already damaged when AEP MEMCO turned the barge over to Cooper T. Smith, precluding summary judgment on this ground.  Cooper T. Smith introduces evidence that the damage to the covers occurred before AEP MEMCO turned over the barge.  For example, the expert report of Kyle Smith provides that the cover pins and stacking posts on the barge covers were damaged and covered in rust. (Kyle Report, R. Doc. 71-2 at 6-8.) ("The cover damage was clearly preexisting as evidenced by the dark rust found in the broken and fractured welds.  Dark rust indicates that the steel had been exposed to the elements for a long period of time thereby causing a chemical reaction as the steel is exposed to air and dirt.")  Ricky Mundy, Cooper T. Smith's supervisor the day of Moore's injury, also

testified that the covers were damaged because the holes were not properly aligned with the pegs and further were old, rusted, and bent, preventing the cover stackers from properly stacking them. (Mundy Dep. at 52-53) ("The squares with the hole in the middle are not properly aligned with the pegs where the top covers – where the covers are supposed to go in.  They are not aligned properly.  They are old rusted and bent.")  As there is evidence that the damage was covered in rust, there are genuine issues of fact regarding whether the damage to the covers was present before AEP MEMCO transferred the barge to Cooper T. Smith.

 2. *Open and Obvious*

There are also issues of material fact as to whether the condition of the covers, particularly whether the pins, stacking mechanisms, and/or vertical skirts were bent or warped, was open and obvious to Cooper T. Smith on the day of Thomas Moore's accident.  Although Mundy testified that the brackets on the covers were old, rusted, and bent, (Mundy Dep. at 81:4-14), he also testified that it was impossible to tell initially that the covers were defective.

> Q: When y'all first got out there that morning, were you able to tell that the covers were defective?
> A. No.
> Q. You learned that through the course of stacking them or attempting to stack them?
> A. Yes.

(Mundy Dep. at 54:17-24; *see also* Roussel Dep. at 18-20) ("Q. Could you tell if there was any damage to the covers or the pins

.... A. I said no three times.") Cooper T. Smith's expert stated that Cooper T. Smith employees would not have been able to observe the damage until they actually lifted the covers. (Smith Report) ("The preexisting condition of the steel lift cover, which made it impossible to stack properly, would not have been known by a crane operator or supervisor because the damage could only be viewed from the underside.")

AEP MEMCO contends that because Cooper T. Smith experienced problems stacking the covers fifteen minutes after it began its operations, and then continued attempting to stack the covers for another hour and a half, the condition of the covers was open and obvious to Cooper T. Smith before Moore's injury.  The crane operator and cover stackers had difficulty from the beginning. They were unable to completely align the first cover they attempted to stack, the "B" cover, because one of the pins was not completely aligned.[2]  Mundy testified that he was aware that the B cover was not completely aligned, but that he had the crane operator and cover stackers move on to the C cover because the stack was "good enough." (Mundy Dep. at 21-22.)  AEP MEMCO cites this deposition testimony as evidence that Cooper T. Smith was

---

[2] For clarification purposes, the parties in the case have referred to the covers as the A, B, and C covers.  The A cover was the stationary end cover on the end of the barge.  The B cover was the second cover that Cooper T. Smith stacked on the A cover.  The C cover was the cover it was attempting to stack on the B cover at the time of Moore's injury.

aware from its difficulties stacking the B cover that there was a problem with the stacking mechanisms. Mundy also testified, however, that he thought the crew could stack the covers even without aligning all the pins between the A and B covers:

> A: I wouldn't have put – I just said I wouldn't have tried to put a third cover on top of this – I wouldn't have tried to put C cover on top of B cover if I didn't think it was sitting good enough to work.
> Q: But at the time this photograph was taken, B cover wasn't sitting properly on A, was it?
> A: It was sitting good enough to try to stack the third cover on top, yes.
> Q: So the pins don't always drop into the holes the way they are supposed to?
> A: Not on the old iron tops, no.

(Mundy Dep. at 21-22.) Further, although Cooper T. Smith's crew might have been aware at this point that the B cover was damaged, there are issues of fact as to whether the crew had knowledge that the next cover, the C cover, was also damaged. When asked whether he would expect the C cover to be damaged because the B cover was damaged Mundy replied, "I wouldn't expect that. Not damage wise, no. Each cover is different." (Mundy Dep. at 80.) He further testified that they realized that the C cover's brackets were old, rusted, and bent only "[a]fter trying to set [it] for 10 to 15 minutes." (*Id.* at 79-80.)

Finally, AEP MEMCO inspected the barge the day before turning it over to Cooper T. Smith and did not find anything wrong with it. (Waddington 30(b)(6) Dep. at 30, 32, 35, 138.) If the condition was open and obvious, AEP MEMCO's employees, whose

9

job is to inspect and repair the barge, should have been aware of the condition. Although Cooper T. Smith had knowledge that the covers were not stacking properly, it did not have engineers or marine surveyors onsite to inspect the covers. Accordingly, the Court finds that there is a material fact issue concerning whether the condition of the covers was open and obvious at the time of Moore's injury and that a more complete factual record is necessary to resolve this issue.

The condition of the covers was open and obvious to Cooper T. Smith, however, at the time of Scott's injury. Not only had Cooper T. Smith had difficulty stacking two of the covers the day before, they had to shut down operations after Moore's injury. Nevertheless, they sent another crew of cover stackers to the same barge, with the same covers, resulting in a second injury.

3.   *Alternatives*

Cooper T. Smith contends that it had no practicable alternative to stacking the covers, an exception to the open and obvious defense. The open and obvious exception to the turnover duty does not apply "if the longshoreman's only alternatives to facing the hazard are unduly impracticable or time-consuming or would force him to leave the job." *Moore v. M/V ANGELA*, 353 F.3d 376, 381 (5th Cir. 2003). As recently noted by the Fifth Circuit this is "a narrow exception." *Kirksey v. Tonghair Maritime*, — F.3d —, 2008 WL 2735870, *7 (5th Cir. 2008).

10

The Court finds that Cooper T. Smith had alternatives available to it other than continuing to stack the covers. Counsel for AEP MEMCO represented during oral argument that Cooper T. Smith was working sixteen different barges on the Mississippi River.  Therefore, Cooper T. Smith could have easily left the cargo barge it was on and had its crew of cover stackers, including Scott, start working another barge without much delay.  In fact, the day after Scott's accident, Cooper T. Smith employed this alternative when it advised AEP MEMCO that it rejected the barge and began working on another AEP MEMCO cargo barge. (*See* R. Doc.. 56-6 at 5 of 17) (e-mails regarding rejection of Barge DEE J 215).  On the other hand, there is no evidence to support Cooper T. Smith's expert's conclusory statement that to reject the barge would "stop/delay cargo operations in the River." (Smith Report, R. doc. 71-2 at 7.) Finally, there is evidence in the record that Cooper T. Smith could have used tag lines as a safer alternative when stacking the covers.  Accordingly, the Court finds no evidence in support of the proposition that Cooper T. Smith had no other practicable alternatives available to it, other than walking away from the job, and other then sending Scott out to work on the same cargo barge where Moore had sustained his injury.

**B.   Limitation of Liability**

Complainants also move to limit their liability to the value

of the DEE J 215.  Pursuant to 46 U.S.C. § 30503, a vessel owner may try to limit its liability for damages to the value of its vessel unless the owner had knowledge of the defect that caused the accident. *Brister v. A.W.I. Inc.*, 96 F.2d 350, 356 (5th Cir. 1991).  Further, "a corporate shipowner may be deemed to have constructive knowledge if the unseaworthy or negligent condition could have been discovered through the exercise of reasonable diligence." *Id.*  An owner has privity or knowledge of a defective condition when he has means of knowledge or where knowledge would have been obtained from a reasonable inspection. *Gibboney v. Wright*, 517 F.2d 1054, 1058 (5th Cir. 1975).

Complainants contend that they lack privity or knowledge of the condition of the barge covers that caused plaintiffs' injuries.  It is uncontested that the DEE J 215 was in Cooper T. Smith's care, control and custody at the time of the accidents, that none of complainant's employees were present during the cover stacking operations, and that complainants were not aware of the problems Cooper T. Smith was having stacking the covers until after Cooper T. Smith told complainants that it was rejecting the barge.  Nevertheless, the Court finds that there are issues of fact as to whether the covers were already damaged when complainants turned the barge over to Cooper T. Smith on June 23, 2006 and therefore whether complainants could have discovered the damage through the exercise of reasonable

diligence.  As discussed above, there is evidence that the pins on the covers were damaged, and possibly bent.  There is further evidence that the pins were covered in rust, indicating that the damage existed before AEP MEMCO transferred the barge to Cooper T. Smith.  Finally, AEP MEMCO admits that it inspected the barge on June 21, 2006, and therefore it had means of knowledge or could have obtained knowledge of the condition of the covers. *See Gibboney*, 517 F.2d at 1058.  Accordingly, there are genuine issues of material fact precluding summary judgment on complainants' motion to limit their liability to the value of the barge.

**C.   Motion to De-Consolidate**

The Court finds complainants last-minute motion to de-consolidate untimely and without merit.  Both accidents happened on consecutive days aboard the same barge while plaintiffs were engaged in the same activity.  Although it is true that different witnesses were involved and will need to testify, and plaintiffs' damages claims are unique, both actions share common questions of both law and fact because the fact finder must determine what parties, if any, are responsible for the damaged covers.  Therefore, the Court finds that judicial economy will best be served by keeping the cases consolidated. *See, e.g., Complaint of B&J Martin, Inc.*, 1994 WL 118338 (E.D. La. 1994).

**IV.   CONCLUSION**

For the foregoing reasons, complainants Liff Limited Partnership, Blaske Marine, Inc., and AEP MEMCO's summary judgment motion on their turnover duty is GRANTED IN PART and DENIED IN PART, complainant's summary judgment motion to limit liability is DENIED, and complainants' motion to de-consolidate is DENIED.

New Orleans, Louisiana, this  5th  day of August, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT