```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA


THOMAS MOORE, III                          CIVIL ACTION

VERSUS                                     NO: 07-1353 C/W
                                           07-2650, 07-2760

AEP MEMCO LLC, ET AL.                      SECTION: "R"(4)
```

**ORDER AND REASONS**

Before the Court is Cooper T. Smith's motion for summary judgment. For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motion.

**I.   BACKGROUND**

On June 24 and 25, 2006, defendant Cooper T. Smith Stevedoring Company, Inc. was opening a crane barge, the DEE J 215, so that the barge could be loaded with pig iron. Complainants LIFF Limited Partnership, Blaske Marine, Inc. and AEP MEMCO LLC own, manage and operate the barge DEE J 215.[1] They had delivered the barge to Cooper T. Smith on June 23, 2006.

On June 24, 2006, plaintiff Thomas Moore was working as a member of the crew of cover stackers on the cargo barge, the DEE

---

[1] For purposes of this motion, the Court will refer to LIFF Limited Partnership, Blaske Marine, Inc. and AEP MEMCO LLC collectively as "complainants," or "AEP MEMCO."

J 215.  The cover stackers worked in conjunction with a crane operator who was located on Cooper T. Smith's crane barge, the P&C, to take the steel covers off the barge holds and stack them at either end of the cargo barge so that cargo could be loaded into the hold.  A fleet tug owned by Kathryn Rae, the M/V CAPT. E.S.C., was tied up to the crane barge at the time.  Because the crew had difficulty getting one of the hatch covers to stack properly, Moore climbed up the hatch coaming to help guide one of the covers that the crane operator was dropping down on top of the other hatch covers.  While Moore was doing this, another cover shifted and crushed his left foot.  Moore testified in his deposition that before the cover shifted and crushed his foot he felt something bump the cargo barge.  After transporting Moore to the hospital, Cooper T. Smith shut down the stacking operation until the next day.

     The next day, June 25, 2006, plaintiff Lawrence Scott worked on the Dee J 215, also as part of a crew of cover stackers.  The P&C was again tied up to the DEE J 215.  A fleet tug owned by Kathryn Rae, the M/V Shelley, was tied up to the P&C.  When the crane operator was again having trouble stacking one of the covers, Scott attempted to help guide the cover that the crane operator was attempting to stack.  Scott's left hand was crushed between two covers during this process.  On June 26, 2006, Cooper T. Smith told AEP MEMCO that it rejected the DEE J 215 because

2

two of its employees had been injured while working with the covers.  AEP MEMCO allowed Cooper T. Smith to move its operations to another one of its barges.

On March 21, 2007, Moore sued AEP MEMCO and Cooper T. Smith. On April 25, 2007, LIFF Limited Partnership, Blaske Marine, and AEP MEMCO filed a limitation of liability action in this Court. On May 2, 2007, Lawrence Scott sued Cooper T. Smith.  On November 27, 2007, all three actions were consolidated in this Court, where complainants had filed the limitation of liability action. The Court heard oral argument on Cooper T. Smith's summary judgment motion on July 30, 2008, and rules as follows.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that

there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

The Fifth Circuit has "arguably articulated an even more lenient standard for summary judgment in certain nonjury cases." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273 n.15 (5th Cir. 1987). In *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir. 1978), the Fifth Circuit explained:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved.

*Id.* at 1123-24.

4

Therefore, in a nonjury case, such as this case, the Court is encouraged to draw inferences, even when they appear to be factual, if a "trial on the merits would reveal no additional data." *Id*. at 1124; *see also Professional Geophysics, Inc. v. Placid Oil Co. (In re Placid Oil Co.)*, 932 F.2d 394, 398 (5th Cir. 1991).

**III. DISCUSSION**

Plaintiffs allege claims against Cooper T. Smith pursuant to the Jones Act, claiming seaman status, and in the alternative, they allege claims against Cooper T. Smith as vessel owner of the P&C crane barge pursuant to § 905(b) of the Longshore and Harbor Worker's Compensation Act. Coverage under the Jones Act and the LHWCA are mutually exclusive.

    *1.   Jones Act*

The Jones Act provides an injured seaman with a remedy for negligence against his employer. *See* 46 U.S.C. § 30104; *Rich v. Bud's Boat Rental, Inc.*, 1997 WL 543093, at *1 (E.D. La 1997) (citing *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263 (1966)). Seamen also have the right to recover maintenance and cure from their employers for injuries they suffer while in the service of a vessel, regardless of whether the shipowner was at fault or whether the ship was unseaworthy. *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 41-42 (1943); *Guevara v. Maritime*

*Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995).  Cooper T. Smith disputes that plaintiffs were Jones Act seamen and, therefore, contends that their Jones Act claims should be dismissed.  "To survive a motion for summary judgment, the plaintiff must demonstrate a factual dispute regarding the permanency or the substantiality of his employment relationship with a vessel or group of vessels, and that his work contributed to the operation or function of the vessel or the accomplishment of its mission." *See Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307, 309 (5th Cir. 1984) (citing *Betrand v. Int'l Mooring & Marine, Inc.*, 700 F.2d 240, 244 (5th Cir. 1983)). While "[s]eaman status is ordinarily a question of fact for the jury," *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 385 (5th Cir. 1985), a court may grant summary judgment where no facts are in dispute with respect to seaman status. *Barrett v. Chevron*, 781 F.2d 1067, 1074 (5th Cir. 1986) (citing *Guidry v. Continental Oil Co.*, 640 F.2d 523, 529 (5th Cir. 1981)); *see also Chandris, Inc. v. Latsis*, 515 U.S. 347, 371 (1995), 515 U.S. at 371 ("And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict.").

To qualify as a Jones Act seaman, one must show that: (1) his duties contributed to the function of the vessel or to the

accomplishment of its mission; *and* (2) his connection with the vessel in navigation (or an identifiable group of vessels) was substantial in both its duration and nature. *Chandris*, 515 U.S. at 368.  "To satisfy the first prong of the *Chandris* test, the claimant need only show that he 'do[es] the ship's work.'" *In re Endeavor Marine, Inc.*, 234 F.3d 287, 290 (5th Cir. 2000).  This requirement is very broad. *Id*.  To determine whether his connection with the vessel was substantial in nature and duration, the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon.  The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time. *Chandris*, 115 S.Ct. at 2190-91 (citations omitted).

Here, Cooper T. Smith contends that summary judgment is appropriate because plaintiffs have not shown that their work contributed to the vessel's function or accomplishment of its mission or that they had a substantial connection with the vessel or group of vessels.  Pretermitting the issue of whether plaintiffs can satisfy the first prong of the *Chandris* test, the

Court finds that plaintiffs cannot meet the second prong of the *Chandris* test, because they cannot show a connection with a vessel in navigation that was substantial in both its duration and nature.

Plaintiffs were both hired by Cooper T. Smith on a day-to-day basis from the International Longshoremen Association, Local 3033's shape up yard when, and if, work was available. (Moore Dep. at 16-17, 90-91; Scott Dep. at 28-30.) Neither plaintiff was assigned to a particular vessel or barge, or a fleet of vessels or barges, but were hired by Cooper T. Smith on an as-needed basis. On the days of their respective injuries, Cooper T. Smith had hired Moore and Scott to work for one day as cover stackers on cargo barges, owned by AEP MEMCO, not Cooper T. Smith. (*See, e.g.,* Scott Dep. at 28:6-8; 30:9-13) ("I went to Shape Up. I know they had work, and I needed to work, and I went to work. ... They were short of people, and they hired me to fill in that position.") (*See also* Moore Dep. at 19:19-22) ("Q: And what did they tell you that you were going to be doing? A: We were going to be opening and closing barges.")

Plaintiffs had little, if any, connection to the vessel owned by Cooper T. Smith, the P&C crane barge. Cover stackers are not assigned to a particular crane barge. They may work in conjunction with the same crane barge throughout the day, but if they return to cover stacking the next day, it might be with a

different crane barge. (*See* Roussel Dep. at 115-116) ("Q: On a typical day, when the cover stacking crew comes out, do they work with the same crane barge until they finish doing their stacking operations? A: Day-to-day basis. ... Q: So I think what you're telling me is, on a day-to-day basis, a stacking crew stays with a crane barge, but it does not mean that they next day the same stacking crew is with the same crane barge? A: That's correct.") Moore never boarded the crane barge on the day of his accident. (Moore Dep. at 40:6-8) ("Q. Did you have to climb on to the crane barge at any time? A. No ma'am.")  Neither plaintiff testified to having any responsibility with respect to the P&C crane barge. Moore testified that he did not help with disconnecting the crane barge from the cargo barge. (*Id.* at 97:15-19.)  Scott specifically testified that he had no duties on the P&C barge, but that all of his duties and responsibilities were on the cargo barge. (Scott Dep. at 190:17-18; 191.)  Scott further testified that it had "been a long time, since before the accident" that he had ridden on the crane barge when it was moving up and down the river. (Scott Dep. at 191.)  The evidence shows that plaintiffs spent their time working on AEP MEMCO's barge DEE J 215.  Their "transitory connection" to the P&C, Cooper. T. Smith's crane barge, falls short of establishing substantiality and is thus insufficient to confer seaman status. *See Buras*, 736 F.2d at 310.

In *Jones v. Mississippi River Grain Elevator Co.*, 703 F.2d

108 (5th Cir. 1983), the Fifth Circuit affirmed the district court's grant of summary judgment dismissing plaintiff's action brought under the Jones Act.  The Court found, based on plaintiff's deposition testimony, that he was not a Jones Act seaman because he did not have the requisite connection to a vessel or an identified fleet or group of vessels. *Id.* at 109. Plaintiff worked at a grain elevator, and he was responsible for performing certain duties on barges, owned by various parties, not his employer, that came to the grain elevator.  The Court noted that "Jones was never assigned to any particular barge and had never worked on the same barge more than once.  He was assigned on a random basis to the variously-owned barges as they came to his employer's grain elevator for unloading." *Id.*  The Court found that his duties included boarding the barge, removing the covers from the barge's grain hoppers so that the grain could be removed, and replacing the covers after the barge was unloaded.  Although the facts of these cases are far from identical, they are similar in that most of the plaintiff's work was performed on barges he randomly worked on, that were not owned by his employer, and his duties included preparing the barges to be unloaded.  The Fifth Circuit held that these facts did not show the connection to a vessel or group of vessels that would confer seaman status. *See also Matter of Hall-Buck Marine Services Co.*, 1988 WL 51243 (E.D. La. 1988) (finding that

claimant, who was hired on a daily basis for various stevedoring companies, who worked on a number of vessels of various ownership, whose duties included stacking barge covers, and who was not assigned to any particular vessel, was not a Jones Act seaman); *Bogan v. Barge T-13315B*, 607 F.Supp. 85, 86-87 (E.D. La. 1985) (holding that plaintiff, who obtained work from union hall, who was hired on a day-to-day basis, and who performed work as a longshoreman on grain barges, including moving barge covers, did not qualify as a Jones Act seaman).

Moore contends that he is a seaman because he had been working for Cooper T. Smith for about six months at the time of his accident. (Moore Aff., R. Doc. 76-5, ¶ 3.)  He also estimates that he spent more than 30% of his time on Cooper-owned vessels. (*Id.* ¶ 4.)  Moore's affidavit mistakenly assumes that he was transported by Cooper-owned crew boats to different locations on the Mississippi River.  Cooper T. Smith produces evidence that it does not own any crew boats. (Borne Aff., R. Doc. 79-2 ¶¶ 4-5.) As plaintiff did not demonstrate any basis of personal knowledge for who owned the crew boats, the Court credits Cooper T. Smith's evidence.  Although cover stackers occasionally traveled on the crane barge, Moore did not do so the day of his injury.

Scott contends that he was employed by Cooper T. Smith on and off for ten years before his injury, and that he was employed exclusively by Cooper T. Smith in the year preceding his injury.

(Scott Dep. at 17-18.)  Cooper T. Smith's records indicate that Scott worked about 43 work days of the entire previous year for Cooper T. Smith. (R. Doc. 79-5.)  Further, the evidence reflects that Cooper T. Smith hired Scott to work on barges that it did not own.  Although he worked in conjunction with various Cooper T. Smith crane barges, there is no evidence that he spent a substantial amount of time on Cooper T. Smith's vessels.

   Finally, plaintiffs introduce testimony that cover stackers sometimes use a shack on the crane barge for shelter, or as a place to have lunch, infrequently clean the shack, and infrequently help the deckhands in mooring Cooper's vessels. (*See, e.g.,* Jackson Dep. at 138-39, 147; *see also* Heintz Dep. at 52, 59) (testifying that cover stackers would help with soft lines "Maybe if they knew the deckhand they would, you now, help him or something, help him just catch the line or something," and further that "they have cleaned [the shack] maybe before, but, I mean ... They've done it on their own, you know, but we've not asked them to do it or nothing.")  These facts do not create a material issue as to whether Moore and Scott themselves had a substantial connection to a vessel or fleet of vessels.  That the cover stackers sometimes spent time on the P&C barge eating lunch or seeking refuge from rough weather is not the type of connection to a vessel or fleet of vessels that creates seaman status. *See, e.g., Chandris*, 515 U.S. at 371 ("A maritime worker

who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are."). Accordingly, the Court finds that plaintiffs have not introduced evidence establishing a genuine issue of material fact regarding their temporal connection with Cooper T. Smith's vessels.

    2.   LHWCA

Cooper T. Smith also moves for summary judgment on plaintiffs' claims against it pursuant to § 905(b) of the LHWCA. Cooper T. Smith contends that because plaintiffs' claims are based on the negligence of Cooper T. Smith's supervisor and crane operator, not against Cooper T. Smith in its capacity as vessel owner of the P&C Crane barge, plaintiffs' claims are precluded.

The LHWCA provides in relevant part:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel ...

33 U.S.C. § 905(b). Pursuant to the LHWCA, an employer is not liable for negligence, except in its shipowner capacity. *White v. Cooper/T. Smith Corp.*, 690 F. Supp. 534 (E.D. La. 1988) ("an

13

employee may sue his employer 'qua vessel' if he was injured as a result of the vessel's negligence."). Section 905(b) further "excludes an injury to an employee doing stevedoring work which is caused by the negligence of a person providing stevedoring services." *Durr v. Global Marine, Inc.*, 673 F.2d 740, 741 (5th Cir. 1982).

Plaintiffs' expert opines that the plaintiffs' injuries were caused by the bent and warped condition of the barge covers, the failure of Cooper T. Smith to provide taglines, the failure of the crane operator to stop the work, and, specifically for Moore, the failure of Cooper T. Smith's supervisor to stop the operation until modifications to procedures and equipment were made. (Liebkemann Report, R. Doc. 5-10 at 2-3.) Plaintiffs cannot recover against the vessel for their claims that the crane operators were negligent, as both Heintz and Roussel were engaged in stevedoring operations at the time of plaintiffs' injuries. *See Durr*, 673 F.2d at 741 (holding that limitation of section 905(b) applied to case where crane operator negligently injured plaintiff because even though crane operator was a seaman, he was performing "traditional longshoring activities" by helping to unload equipment from platform and load it onto vessel); *see also Cavalier v. T.Smith & Sons, Inc.*, 668 F.2d 861 (5th Cir. 1982) (finding that longshoreman's action was barred because his injury was caused by negligence of either the crane operator or flagman

while they were engaged in providing stevedoring services to vessel).

Plaintiffs further contend that the negligence of Ricky Mundy, the supervisor at the time of Moore's accident, is "vessel owner" negligence, not co-employee negligence, relying on a Second Circuit case, *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789 (2d Cir. 1979). In *Smith,* the court noted that whether the vessel's employee who was allegedly negligent was acting in his capacity as an agent of the vessel or as an employee performing longshoring services would determine whether the plaintiff could recover under § 905(b). The Court further noted in a footnote that "supervisory personnel in particular will continue to fulfill their general duties as agents of the shipowner, and the negligent discharge of these responsibilities can still result in liability to the vessel." *Id.* at 796 n.5.

Other circuits, including the Fifth Circuit, have also found that to determine whether a plaintiff can recover for the negligence of a supervisor requires that a determination be made as to whether the supervisor was acting in his or her capacity as a stevedore, or as an agent of the vessel. *See, e.g., Smith*, *supra; Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31 (3d Cir. 1975); *Pichoff v. Bisso Towboat Co., Inc.*, 748 F.2d 300 (5th Cir. 1984); *Bogan*, 607 F.Supp. at 88. In *Griffith*, an employee of a steel company, which was the owner pro hac vice of

15

the barge he was working on, sustained injuries while loading the barge.  There was evidence that Allfree, the crew's foreman who was also employed by the steel company, became aware that the barge covers were difficult to move, and therefore directed the crew to stop loading the barge and close the covers.  Allfree then left the area.  As the crew was closing the covers, the plaintiff stood on a cover that moved backward, causing him to fall into the hold and sustain injuries.  The district court granted summary judgment for the owner pro hac vice of the barge.  The Third Circuit reversed and remanded for further factual development after finding that "on the present record, there is evidence that Joseph Allfree, Wheeling's crew foreman, observed the defective condition of the hatch covers and departed, apparently without giving any warning of a potentially hazardous condition.  There is no conclusive evidence that he made these observations in the capacity of stevedore or as agent of Wheeling as owner pro hac vice."

In *Pichoff*, the Fifth Circuit also found that the relevant analysis is whether the employee's negligence is committed in his capacity as stevedore, or as an agent of the vessel.  In that case, the employer's general manager insisted that the employee, who was repairing the employer's boat, perform his job hurriedly despite unsafe working conditions, including insufficient light.  The trial court found that the general manager was partially

16

negligent in ordering plaintiff to conduct a "hurried inspection" without a light, and further that he acted hastily "because he was a supervisor in charge of the employer's overall operations." 748 F.2d at 302-03.  The Fifth Circuit affirmed, finding that when the manager told plaintiff to hurry up "he was fulfilling a duty as an agent of the shipowner," and "was guided by his corporate concern." *Id.* at 303.

The Court finds no law in this Circuit that categorically forecloses the application of the § 905(b) exclusion to Mundy. Further, at this time, there is inconclusive evidence as to whether Mundy's alleged negligence was committed in his capacity as stevedore, or as an agent of Cooper T. Smith.  Accordingly, the Court denies Cooper T. Smith summary judgment on this issue.

Plaintiffs' expert also opines that Cooper T. Smith's failure to provide taglines was negligent.  The Court finds that there is an issue of fact as to whether the crane barge was equipped with taglines.  While the parties have not pointed to any direct testimony that taglines were not available, Mundy testified that they would provide the cover stackers with taglines if they wanted them. (Mundy Dep. at 22) ("It's optional. If they want a tag line, we will provide it for them.")  Mundy's testimony is ambiguous because the Court cannot tell if it means that there were taglines available on the crane barge that were not being used, or whether Cooper T. Smith would obtain taglines

17

if the cover stackers requested them.  Accordingly, there are issues of fact as to whether Cooper T. Smith was negligent because the P&C did not have taglines onboard.

## IV. CONCLUSION

Cooper T. Smith's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Plaintiffs' Jones Act claims against Cooper T. Smith are dismissed.

New Orleans, Louisiana, this <u>13th</u> day of August, 2008

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT